UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 12-57-JBC

MARCELLE HEBERT,                                                          PLAINTIFF,

V.                    **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \* \*

       This matter is before the court upon cross-motions for summary judgment on Hebert's appeal from the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The court will grant Hebert's motion in part, R. 11, and deny it in part, deny the Commissioner's motion, R. 12, and remand this case to the Social Security Administration for further consideration.

       At the date of her application for DIB, Hebert was a 46-year-old woman with a college degree as a social worker and had work experience as a nursery coordinator, teacher assistant, and program assistant. AR 90, 104. She alleged disability beginning June 6, 2008, due to back problems and leg pain, which caused her to change positions frequently, as well as nausea related to pain. AR 244. She filed her application on September 22, 2008; after several administrative denials and appeals, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that Hebert was not disabled. AR 72-81. Under the traditional five-step analysis at 20 C.F.R. § 404.1520, the ALJ found that Hebert had not engaged

1

in substantial gainful activity since June 6, 2008, the alleged onset date; that she had severe impairments consisting of neurocardiogenic syncope and degenerative disc disease of the lumbar spine with mild foraminal stenosis at multiple levels; that her impairments, whether considered singly or in combination, did not meet or equal one of the Commissioner's Listings of Impairment; that she retained the residual functional capacity ("RFC") to perform a reduced range of light-level work, including the ability to sit six hours in an eight-hour day and stand and walk six hours in an eight-hour day, with no prolonged standing, walking, or sitting in excess of 45 minutes to one hour without interruption, no climbing of ladders, ropes, or scaffolds or balancing, occasional stooping, kneeling, crouching, crawling, and climbing of stairs and ramps, no exposure to concentrated vibration or industrial hazards and no work at heights; and that, based on her RFC and the testimony of a Vocational Expert ("VE"), a significant number of unskilled jobs existed in the economy which Hebert could perform. AR 72-80, 105. The ALJ thus denied Hebert's claim for disability on November 3, 2010. AR 81. The Appeals Council declined to review, AR 1-3, and this action followed.

   Hebert essentially presents two issues on review. First, she argues that the ALJ failed to consider the combined effect of her impairments. Second, she asserts that the ALJ erred in not giving controlling weight to the restrictions provided by her treating physician, Dr. Paul Brooks. Because the ALJ did not correctly weigh the treating physician's opinion in accordance with the Social

Security Administration's regulations and the applicable law, the court will remand for further consideration.

First, the ALJ's decision adequately considered the combined effect of Hebert's impairments. He explicitly found that they did not meet or equal a listing at Step Three, AR 76, which is an adequate explanation of his thought process. *Gooch v. Sec'y of Health and Human Servs.,* 833 F.2d 589, 591-92 (6th Cir. 1987).

The ALJ's decision, however, does not deal adequately with the treating physician's opinion. Dr. Brooks, a specialist in rehabilitation, began treating Hebert in December 2008 for her complaints of low back and leg pain. AR 567. Dr. Brooks obtained an MRI of the lumbar spine showing moderate bilateral neural foraminal stenosis at L4-L5 and L5-S1, and mild-to-moderate stenosis at L3-L4, along with broad-based disc bulges, mild central canal narrowing and probable perineural root sleeve cysts in the thoracic spine. AR 503-04, 609-10. For complaints of syncope, he obtained tilt-table testing, which was positive for a neurocardiogenic mechanism. AR 546, 618. He referred his patient to a neurosurgeon, Dr. Leon Ravvin, for evaluation. AR 566.

Dr. Ravvin examined Hebert on January 21, 2009, noting her history of a left lumbar discectomy at L4-L5 in 1992, which reportedly had not relieved her leg pain. AR 505. Multiple medications and injections had not helped, either. Dr. Ravvin's examination was largely normal, although there was some mild tenderness and positive straight-leg raising on the right at 30 degrees. AR 506. His review of

the MRI showed evidence of previous surgery at L4-L5 with collapse of the disc space at that level, creating some bilateral foraminal stenosis but with no significant change since 2006.  Dr. Ravvin offered a decompressive laminectomy and fusion at L4-L5, but Hebert did not wish to proceed with surgery.  *Id.*  Dr. Ravvin then recommended continuation of "conservative" treatment.

Hebert continued treatment with Dr. Brooks, who prescribed a variety of medications with little or no reported success.  AR 550-63, 666-86.

Dr. Brooks completed a physical RFC form on June 28, 2010, which provided lifting and non-exertional restrictions largely consistent with the ALJ's ultimate RFC finding.  AR 665.  Significantly, however, it limits Hebert to sitting a total of two hours, standing one hour, and walking two hours in an eight-hour day.  *Id.*

The only other opinions from medical sources concerning physical restrictions come from non-examining state agency physicians Darrell R. Caudill and Amanda Lange.  Caudill reviewed the evidence as of February 27, 2009, and opined that Hebert could perform light-level exertion but was capable of sitting six hours and standing and walking six hours in an eight-hour day.  AR 590-96.  He noted her MRI and tilt-table testing results, added that there was no medical source statement regarding her physical capacities, and stated that her allegations were "credible." AR 590-91, 595.  Dr. Lange affirmed Dr. Caudill on August 25, 2009, without additional comments.  AR 653-59.

4

The ALJ stated in his decision that he gave little weight to Dr. Brooks's opinion because it was inconsistent with Hebert's "conservative treatment history with little objective evidence of worsening of her condition since May 2006." AR 79. The ALJ stated that his functional assessment was supported by Hebert's continued part-time work since her alleged onset date, her recent conservative treatment history consisting of prescriptions which she had not dependably taken, and, "generally," by the state agency medical consultants' physical assessments. *Id.* Thus, the ALJ concedes that his restrictions are not directly supported by either the treating or the reviewing sources.

The Commissioner's regulations recognize that the opinions of treating physicians are entitled to greater deference than other sources because of their ability to provide a "detailed, longitudinal picture" of a claimant's impairments and because they "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(d)(2). In situations where the treating source opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the ALJ must give it controlling weight. *Id.* Where the opinion is not entitled to controlling weight, the ALJ must determine how much weight is appropriate by considering the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a

5

whole, and any specialization of the treating physician. *Id. See also Wilson v Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Social Security Ruling 96-2p provides that the "good reasons" the ALJ must state for not giving a treating physician's opinion controlling weight "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Part of the reason for the requirement is "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [he] is not." *Wilson*, 378 F.3d at 544 (citations and internal quotation marks omitted). The failure to follow the procedural requirement in explaining precisely the weight given to the treating physician opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

The ALJ's rationale for giving Dr. Brooks's opinion little weight was condensed to saying, without elaboration, that it was inconsistent with Hebert's conservative treatment history and that there was little objective evidence of worsening of her condition since May 2006. AR 79. Her treatment was "conservative" in the sense that she did not have surgery, but both Dr. Ravvin and another neurosurgeon, Dr. John Gilbert, thought that her condition could warrant surgical intervention, albeit with no guarantee of success. AR 506, 563, 608.

6

Thus, the ALJ's implication that her condition did not warrant aggressive treatment measures is slightly misleading. Moreover, Dr. Brooks was willing to provide strong pain medications, including Ultram and Opana, in addition to trying other medications. AR 552. Ultram is "indicated for the management of moderate to moderately severe chronic pain." *Physicians' Desk Reference*, (Sabrina Borza, Kathleen Engel, ed., 2009), p. 2429. Opana is an opioid medication "indicated for the relief of moderate to severe acute pain." *Physicians' Desk Reference*, (Bette Kennedy, ed., 2011), p. 1085. It is not clear from the ALJ's opinion why treatment consisting of the prescription of such medications, and others, would be inconsistent with the sitting, standing, and walking restrictions given by Dr. Brooks. As for the statement that there was little objective evidence of a worsening of Hebert's condition since May 2006, based on Dr. Ravvin's interpretations of her MRIs, it is notable that Hebert stopped her full-time job as a nursery coordinator in January 2006 because she found it too strenuous. AR 90-91, 253, 257. She had worked only part-time jobs as a substitute teacher and teacher's assistant since that time. AR 91, 253. While her condition may not have objectively worsened since May 2006, the evidence shows that she had not worked full-time since then, and the ALJ did not cite specific evidence to discredit Dr. Brooks's walking, standing, and sitting restrictions.

Furthermore, the ALJ did not weigh several of the factors required by § 404.1527(d)(2), such as the length of the treatment relationship, frequency of examination, and the specialization of the treating physician. To the extent that he

7

discussed the supportability of the opinion and the consistency of the opinion with the record as a whole, his rationale is not persuasive. While the evidence does not support an award of benefits, the court will remand for further consideration because the ALJ did not provide "good reasons" for discounting the treating physician's opinion.

Additionally, the state agency reviewing opinions are inadequate to support the ALJ's RFC. The state agency reviewers did not have the benefit of a review of all of the evidence. *See Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 409-10 (6th Cir. 2009). Hebert consistently reported that she was unable to tolerate the repetitive sitting, walking and standing involved in full-time work, AR 260, 262, 277, 295, 312-13, 315, 317-19, 343; however, the lead state agency reviewer, Dr. Caudill, found her allegations "credible" while inconsistently indicating that she could perform standing, walking, and sitting consistent with full-time work. AR 590-91. Such an internally inconsistent opinion cannot, standing alone, provide substantial evidence to support the ALJ's conclusion.

The court having found that the Commissioner's decision is not supported by substantial evidence,

**IT IS ORDERED** that Hebert's motion for summary judgment, R. 11, is **GRANTED** in part and **DENIED** in part, and the case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 12, is **DENIED**.

The court will enter a separate judgment.

Signed on December 28, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY